Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is 20-1267, Trayvon Thompson v. United States. Good morning. May it please the Court, Seth Gretzer for the Appellant Thompson. With the Court's permission, I would like to request to reserve three minutes' time for rebuttal. Yes, you may. Okay. So a very discreet issue in Mr. Thompson's habeas petition, whether or not trial counsel, sentencing counsel, had rendered constitutionally deficient performance when they failed to challenge the 2007 Maine Narcotics Conviction under the predicate of 4B1.2. I'll begin today as one would, I assume, in any habeas case, but the first prong of Strickland, perhaps somewhat unusually, I will begin my argument under Strickland by commending my trial counsels, my predecessor trial counsels, for their work in attacking the Massachusetts conviction. There was also separately, no doubt, they were very much up to speed on the Alene Apprendi issues. And yet we do have the issue, that which brings us here today, and that which impelled this Court to grant COA, is that there was no challenge made to this Maine Narcotics Conviction. That is very significant because the career offender operation of Chapter 4 very much increased the sole sentence that was meted out to Mr. Thompson. I don't even think the government would disagree with that if for note 8 of their own response to the magistrate judge, response to the habeas petition as ordered by the magistrate judge, conceded that the amount of time was much higher under the operation of the guideline Chapter 4 than it would have been just under the procedural objections. And so the operation of the Maine Narcotics Statute is this. This is a divisible statute. So under the long-running authority, at least back to Shepard in 2005, I believe, from the Supreme Court, the modified categorical approach requires a sentencing court, had such an argument been made to it, to compare both the structure of that divisible statute, to look whether or not the least culpable conduct under that state statute compares, grafts onto, adheres to the relevant federal mechanism that is being compared. The second prong of 4B1.2, the specifics element under which this court granted COA and directed a briefing, specifically requires either distribution or possession with distributory intent. The problem, though, is that the Maine divisible statute does not, even though it's entitled trafficking, not everything underneath that conclusory word traffic so qualifies for distribution. We know that the statute has since been amended, I believe, in the last two years, but certainly back in 2007 at the point in time when my client was convicted under it pursuant to his plea, had this exception for heroin and or. How obvious was it before our rulings that a charge under a statute, under a trafficking statute, for heroin was not, did not satisfy the requirements of the distribution claim under federal law? I would argue, just to add it, that it always, that was always the case. The statute was always the statute. Perhaps no one came along until these mostly ACCA, so a slightly different context, challenges came up and McCarran won and then the cases we know about in the years since, but the statute was always a divisible statute. The statute always had this exception for at least these two substances that under the least amount of possible conduct that was incompletory, that it would not so qualify as to have that possession with intent to distribute. The statute, to my knowledge, has never changed. What do you do about the third prong of your, in other words, how do you show prejudice here? Absolutely, Judge Katz. I would argue here my prejudice analysis under Strickland at one level, on Mr. Thompson's attorney, I want to advocate for the broadest possible relief possible. That would be, look how much higher of a sentence he received by operation of Chapter 4 than just under the guidelines. But even if I cannot convince this Court to go quite that far, the answer is that would have to be established once the government, which bears the burden, I should add, on proving a 4B enhancement, if the, if they can get separate documents. Let me stop you there because that's not clear to me, so I want to understand your reasoning there. We're not on a direct appeal of the question of whether the enhancement should apply. We're on a habeas Strickland claim, and don't you, as part of the elements of that claim, don't you need to show that had counsel done what you say counsel should have done, that it would have led to some reasonable probability, though, of a different result? Yes, absolutely. That is, of course, the Strickland. So how do you show that when you don't have the Shepard documents in the file and aren't telling us that there are Shepard documents out there that would show that this wasn't under the cocaine branch of the main statute? Yes, I understand, Judge Scott. There is not, at least at the posture in which the case presented when it comes to the appeals court, a way to expand the record. We are, of course, here in habeas if the objection were made in the trial court. In other words, if this court remands to the trial court to now the objection can be made, either the government, which would then bear the burden to Prong would be challenged, can either reduce Shepard documents or they cannot. That's the remedy. In other words, perhaps they can establish that we fell under a different element or we did not, but as we stand here right now, all we know is that had Mr. Thompson prevailed upon a successful objection, then he necessarily would have gotten a lower sentence. Maybe he can get to that ultimate point on a remand from this court or maybe he cannot, but certainly at the element of showing some level of harm, there is no doubt that the harm but for the, say, Sixth Amendment violation would be a significant reduction in sentence. Haven't we rather repeatedly held, both under plain error review on direct appeals and under If the claim is made that there should have been or there could have been some problem because of the overbreadth of the underlying offense, the burden is on the party making the plain error argument or the habeas claim to show that it would have fallen under the overbroad branch had counsel pursued it. Yes, certainly. No doubt, just kind of that any habeas petitioner, like any plaintiff who comes to court, does bear a burden. As I stand here before you today, the issue was handed to me where the record was already complete. Those documents, as you mentioned, unfortunately I have to concede, were not attached by Mr. Thompson in his pro se briefing. In so far though, there's also another train of thought, I see my time is rapidly dwindling, but just to complete the sentence, just kind of that pro se pleadings are liberally construed that if Mr. Thompson were given the opportunity at the district court for the objection to be properly made, then we would know for sure whether or not those documents can be adduced by either party. But when the objection is made, then at that point, the burden, of course, would be on the government to show that the enhancement applies. Thank you. Are there any further questions? Judge Lynn? No. No. Thank you. May it please the court, good morning. My name is Lindsay Feinberg and I represent the United States in this matter. This court should affirm the judgment below for two reasons. First, Mr. Thompson is not met his burden of establishing that sentencing counsel's representation fell below an objective standard of reasonableness, and second, Mr. Thompson likewise has not met his burden of showing a reasonable probability that but for sentencing counsel's error, he would have received a lesser sentence. I'd like to begin by discussing the prejudice problem. Mr. Thompson has not shown a reasonable probability that but for trial counsel having challenged whether his 2007 main conviction for unlawful trafficking qualified as a controlled substance offense, he would have received a lesser sentence. The fatal flaw here, as the court has alluded to in its questioning, is that Mr. Thompson has presented nothing in the existing record to establish the drug type was heroin as opposed to cocaine. Mr. Thompson is the party best suited to know what drug type or drug quantity was implicated when he was convicted of main unlawful trafficking in 2007, and as this court has already acknowledged in its questioning to opposing counsel, as the moving party in the context of a federal habeas petition, the burden is on Mr. Thompson to make out a case for Section 2255 relief. Yet he's offered this court nothing. He offered the lower court nothing. There's no affidavit or sworn statement that was presented as an attachment to a 2255 petition. There was no additional Shepard documents. There was no police report. There is nothing upon which this court can assume, which is what it's being urged to do, assume prejudice. And as a result, his Strickland claim fails on the second prong, prejudice, and the court did not even address the first prong. If, however, the court is inclined to address both prongs, as to the performance of sentencing counsel, it is clear that sentencing counsel's advocacy was objectively reasonable, despite the fact that sentencing counsel challenged only one of the two career offender predicates. The specific objection to Mr. Thompson's career offender designation, regarding his 2007 main conviction for unlawful trafficking, relies on two subsequent developments in this court's case law. Mulchern 1, which was decided in 2017, and Mulchern 2, which was decided in 2022. It is now 2023. These decisions post-date Mr. Thompson's sentencing in June 2013, by four years and nine years respectively. And at no point, either, again, before the lower court or before this court, has Mr. Thompson identified a single existing precedent, but for these two cases, that make this argument readily accessible to sentencing counsel at the time. Counsel, your brother says that the statute has never changed, so there really hasn't been a change in law. There's been several amendments to the Main Drug Trafficking Statute, Your Honor. In fact, I was reading the statute last night, and I think going back and looking, there have been changes. Whether those changes were germane or not, to the argument being made, under the modified categorical approach, I suppose is a different question. But the fact of the matter is, I have labored to find a single case, prior to 2013, where a party made this argument, and I assume my brother has as well, and neither of us have found one. To the contrary, there are some cases, albeit in dicta, where counsel has chosen not to raise the argument on appeal. And absent that existing precedent, under the first prong of Strickland, it's impossible to find that counsel was deficient here, because the argument didn't exist at the time. If I may, on the performance prong, it seems to me that the government's position has several component parts. One is that the person best suited to know whether this was a heroin conviction was the defendant, and he may very well have told his counsel at the time. There's certainly no evidence that he did not, and that would have eliminated any possible challenge. Another is, I believe he had three sequential counsel, and each of them focused on the other aspect, the assault and battery, with a dangerous weapon conviction under state law. And they pursued that, which does suggest that they looked at whether there was a basis at that time to have challenged the main drug conviction. And if three lawyers or two lawyers reached the same conclusion, it's a little bit hard to say that that violates the performance standards. And then there is a large body of our case law saying counsel is not required to predict future developments in the law in order to comply with the Strickland performance standards. And you point out it's 10 years and close to 15 years later. Now, do I have all of those correct? Yes, Judge Lynch, you do. Remind me, Mulkern, when Mulkern came up. The first Mulkern decision was in 2017, Your Honor, and the second was in... And there, didn't the district court apply the enhancement that we then, in Mulkern, held shouldn't have been applied? That is correct, Your Honor. So that would suggest someone in that case, counsel and or the court, were not anticipating or agreeing with the argument that we ultimately held in Mulkern. That is also correct, Judge Giotta, yes. And just dovetailing with something that Judge Lynch has previously noted, in terms of what the record shows, in addition to the three lawyers having represented Mr. Thompson in one indication from the record that the government would point to that indicates the trial counsel did look at this. And specifically, I would direct the court to docket entry 116 at pages 7 and 8. It's quoted in the government's brief as well. It establishes that Mr. Thompson's first attorney, at least, researched the issue of Mr. Thompson's main unlawful trafficking conviction, which, if the court recalls, formed the basis not only for his career offender predicate, but also for his 851 enhancement. And at that time, trial counsel represented to the court, quote, I took a look at the law on this, end quote. And that trial counsel didn't anticipate contesting his main unlawful trafficking conviction. One thing that puzzles me about these cases, every time we have them, is there is, in Maine Superior Court, records, either a record of this 2007 Maine offense conviction, or there isn't. And if there is, there's likely a Shepard document that shows whether it was for cocaine or heroin. And it's just sitting there, or its absence is sitting there. And neither counsel is saying, here it is, or here's what it says. Each counsel is saying, no, you have to do it. Seems a little odd that neither counsel, in these cases, would grab it and put an end to any dispute about what it says. Well, at the time of Mr. Thompson's sentencing, Judge Kayada, the government counsel, indeed, did introduce these as sentencing exhibits. And I would suggest that at that time, those Shepard documents that were introduced, which were the certified J&Cs for both convictions, were what was traditionally introduced by a prosecutor at sentencing when there was an issue. And in fact, I think government counsel, at the sentencing hearing, actually noted that she was introducing these records at that time. So the appellate division wasn't upset with her. So the government, at least, was aware of its burden and provided what it thought was sufficient at that time. And absent being on notice of some additional argument about the inadequacy of that Shepard document, there would be nothing else to go and find from the government's perspective at that stage. And of course, now, when we're in a habeas context, the burden is no longer on the government. Rather, it's Mr. Thompson who bears the burden of at least marshalling something, whether it be, for the first prejudice prong, existing precedent. So some sort of law to support the notion that trial counsel should have made this argument back in 2013. Or for the second prejudice prong, some sort of existing facts, something in the record. That's what the prejudice prong hinges upon. And having done neither of those things, Mr. Thompson simply hasn't met either component of Strickland. He has not established deficient performance, and he has not established prejudice. I'd like to follow up on Judge Cayatta's question. The Shepard document the government did produce is ambiguous as to the nature of the underlying drug. Are there other documents routinely kept in the Maine Superior Court which would have provided more information? The unsatisfactory answer, Judge Lynch, is it depends on the Maine Superior Court. Having spoken with several state prosecutors, it tends to depend upon the court and how old the conviction is. So there's no way of knowing without doing further research. Okay. Thank you. Thank you. Judge Howard, if I may, I'd like to begin my rebuttal with this very specific answer to the question you asked at the outset of the prosecutor. What I was thinking of was in Mulcairn 2. This is the September last year opinion footnote 5, quote, the provisions treating heroin and fentanyl separately from the other drugs for trafficking purposes formally found at a Maine statutory site were repealed in 2021, though that does not affect Mulcairn's appeal, end quote. So when I said the statute had not changed, it's never ever changed ever, but at least as relevant to the purposes we are here, that's what I had in mind. I would then like to direct my next document to the question that Judge Lynch asked towards the end, which of course is the actual 2007 judgment and commitment that's on page four of my brief for easy reference. It's a little hard to read, but we're certainly clear from the type portion that the charge was unlawful trafficking of scheduled drugs, class B, and we know that class B, by looking at the very next section after 1103 of this Maine statute, necessarily refers to, among other things, Schedule W, and that's where both heroin and different types of fentanyl are found. So I don't know the answer, Judge Cata, if there are Sheppard documents beyond this judgment and conviction, which was only introduced at the sentencing, but Sheppard has never said, even all the way back to 2005 at least, that the categorical approach required, you know, the indictment and the plea transcript and so forth. It says other type of documents that such court may have, and it may well be that this was a plea that was not recorded, which in my experience is actually somewhat common in certain state courts around this country. So there was at least one Sheppard document, as the government prosecutor just said, that was this judgment and conviction, and as Judge Lynch said, it is ambiguous as to which narcotics would have been involved. And under the categorical approach, even before we get to the modified categorical approach, under the plain vanilla categorical approach, the court looks to the least inculpatory conduct under the state offense and then sees how that graphs onto the federal statute. Here we're not talking about federal drug crimes broadly, 841. The sentencing guideline, for whatever reason, was very particular in 4B for these Chapter 4 enhancements to apply, that there had to be something more than that which is just duplicative of criminal liability generally. As to prejudice, just kind of the question you asked me, that second prong of Strickland, I think the strongest evidence I can point you to in the record as before you, as to prejudice, is footnote 8 of the government's response in the district court, where they themselves talked about how much higher the sentencing was underneath that Chapter 4. That is what I would argue is the true harm analysis. If this court remands for resentencing, the trial lawyer, if they can make a meritorious objection as to that, whether or not the main narcotics conviction is a sufficient predicate under Chapter 4, then if the government has additional Shepard documents, then so be it. They were the party that sought this enhancement, and in that sense, if I could just make one last point. Can you wrap it up? Okay. The biggest difference between the Shepard document that you have in front of you today and that which you see in the other cases, most recently in Mohamed, it was a, quote, no evidence that the main conviction rested on anything other than the intentional distribution plea, end quote. So in cases like Mohamed, it was very clear what the defendant had pleaded to. There's a complete absence of that in this case, and that's why I would argue that both prongs of Strickland have been satisfied. Thank you. Thank you. That concludes argument in this case.